Jacob Markowitz, J.
This is an action by 10 members of Local 202 of the International Brotherhood of Teamsters, suing on behalf of themselves and all others similarly situated, against the trustees of the Local 202 Welfare Fund and against Local 277 of the International Brotherhood of Teamsters, to enjoin the transfer of moneys constituting a portion of the Local 202 Welfare Fund reserve to the trustees of the Local 277 Welfare Fund. The defendants have served supplemental answers containing counterclaims for judgment declaring that the trustees of the Local 202 Welfare Fund have the power to make the proposed transfer; and they have moved for judgment on the pleadings and for summary judgment. The plaintiffs have cross-moved for summary judgment. The factual allegations of the defendants ’ counterclaims and their affidavits in support of the motion for summary judgment are not controverted.
Prior to September, 1954, Local 202 had about 4,000 members, of whom about 3,025 (called the “ Produce Employees ”) worked for distributors of fruit and vegetables (called the “ Produce Employers ”), and about 975 (called the “ Dairy Employees-”) worked for distributors of dairy products (called the “Dairy Employers ”). The Local 202 Welfare Fund had been established in April, 1949, pursuant to an agreement and declaration of trust, to provide life, accident and health insurance for both groups of employees and their families. The fund was administered by trustees comprising representatives both of Local 202 and of-the employers.
In September, 1954, at the direction of the International Brotherhood of Teamsters, the 975 Dairy Employees were transferred from Local 202 to Local 277, a newly chartered local *199 affiliated with the International. The Dairy Employers, however, continued to contribute to the Local 202 Welfare Fund on behalf of the Dairy Employees, and the latter continued to be covered by that fund, until March 1, 1955. At that time, under collective bargining agreements newly made between Local 277 and the Dairy Employers, the latter ceased to make contributions on behalf of their employees to the Local 202 Welfare Fund and, instead, began to contribute to the Local 277 Welfare Fund, a newly established trust fund providing benefits similar to those of the Local 202 Welfare Fund and administered by trustees comprising representatives of Local 277 and of the Dairy Employers. The Dairy Employees thereupon began to receive welfare benefit from the Local 277 Welfare Fund and ceased to be covered by the Local 202 Welfare Fund.
On March 1, 1955, when this change occurred, there was a reserve in the Local 202 Welfare Fund of $660,000 which had been accumulated from contributions made on behalf of both the Dairy Employees and the Produce Employees from April, 1949, until that date. In order to prevent a forfeiture by the Dairy Employees of their ratable portion of that reserve, the trustees of both Welfare Funds and the officials of both local unions began discussions looking to the transfer of the Dairy Employees’ ratable portion of the reserve from the Local 202 Welfare Fund to the Local 277 Welfare Fund. While those discussions were pending, this action was begun to enjoin the trustees of the Local 202 Welfare Fund from making any transfer of moneys.
Thereafter, the trustees of the Local 202 Welfare Fund unanimously concluded that a portion of the reserve in that fund was accumulated from contributions made on behalf of the Dairy Employees and unanimously decided to pay over $55,000 to the Local 277 Welfare Fund, of which the Dairy Employees are now beneficiaries, provided this court holds that they have power to do so. Local 202, by its executive board, has concurred in the decision of the trustees of the Local 202 Fund; and both Local 277 and the trustees of the Local 277 Welfare Fund, who represent the transferred Dairy Employees, have agreed that the payment of $55,000 to the Local 277 Welfare Fund will constitute a fair and equitable disposition of the matter. The plaintiffs admit the facts to be as stated and do not dispute the fairness of the sum proposed to be transferred. Their only claim is that, under the Local 202 Welfare Fund Trust Agreement, the trustees of that fund lack power to make any transfer. Accordingly, the question presented is whether, under the circumstances of this case, the trustees of the Local *200 202 Welfare Fund are without power to transfer a portion of the reserve in that fund to the Local 277 Welfare Fund.
Contributions made to a welfare fund, as well as the reserve accumulated therefrom, actually constitute a portion of the compensation of the employees on whose behalf they are made (cf. Labor Management Relations Act, 1947, § 302, U. S. Code, tit. 29, § 186, 93 Cong. Rec. 4752, 4753). Because such funds are trust funds, however, the participating employees have only an equitable interest in the reserve, as beneficiaries of the trust, and have no right to have any part of the reserve paid over to them directly. Nevertheless, that equitable interest is a substantial one; for the reserve serves as a protection against an increase in the cost of benefits and against a decline in employer contributions, and it may also be used in the discretion of the trustees to obtain greater benefits than would be possible on the basis of current contributions alone.
The Dairy Employees in the case at bar are no longer covered by the Local 202 Welfare Fund. Accordingly, if the portion of the reserve in that fund accumulated from contributions made on their behalf cannot be transferred, they will lose the protection and advantage that they would otherwise derive from their equitable interest as beneficiaries of that reserve. On the other hand, if their ratable share of the Local 202 Welfare Fund reserve is transferred to the Local 277 Welfare Fund, their equitable interest as beneficiaries thereof will be preserved and continued.
The transfer of the Dairy Employees from Local 202 to Local 277 and from the Local 202 Welfare Fund to the Local 277 Welfare Fund is a contingency that was not contemplated in the Local 202 Welfare Fund Trust Agreement. That trust agreement contains no express provision either authorizing or prohibiting a transfer of funds such as is here proposed.
Plainly, however, where a reserve is accumulated in a welfare fund, the protection and advantages provided by that reserve should, in the absence of countervailing considerations, be enjoyed by the employees on whose behalf the reserve was accumulated (cf. Whelan v. O’Rourke, N. Y. L. J., April 23, 1956, p. 7, col. 7, mod. 5 A D 2d 156). This does not mean that an employee could lawfully demand that his prorata portion of the reserve be paid directly to him j for Ms interest therein is only the equitable interest of a cestui que trust. Nor does it mean that there may not be circumstances under which an employee may lose even that equitable interest.
A reading of the ‘£ Agreement and Declaration of Trust ” which created and established the Local 202 Welfare Fund *201 clearly indicates that the employees to be benefited by the con- . tributions of any employer, are primarly those of the particular employer.
Thus a recital in the second paragraph of the trust declaration describes the employers’ contributions to the welfare fund as being for the benefit of ‘ ‘ certain members of the Union employed by such employers ”. Section 1 of article II states that the purpose of the fund is to benefit the ‘1 Employees of the Employers ”. The word “ Employees ” is defined in section 2 of article I to mean those members of the union covered by a collective bargaining agreement ‘ ‘ between their Employer and the Union”, while the word 11 Employer ” is defined in section 1 of article I to mean an employer who contributes to the welfare fund pursuant to such an agreement. Beading section 1 of article II (supra) in the light of these definitions and the recital above referred to, it becomes clear that the employees primarily intended to be benefited by the contributions of any employer are the employees of that particular employer. The provision of section 2 of article VII, that the benefit of the insurance, which is the prime purpose of the welfare fund, is lost to the employees of any employer who ceases to be such (within the definition contained in art. VII, § 1) by failing to make a contribution when due, or by ceasing to be a party to a collective agreement with the union, confirms the view that the contributions of each employer were designed to benefit primarily his own employees.
Section 1 of article IX of the declaration of trust authorizes its termination at any time by the unanimous vote of all the trustees with the concurrence of the union, in which event section 2 provides that the fund, after payment of obligations, shall be distributed and applied ‘ ‘ in such manner as will, in their (the trustees’) opinion, best effectuate the purpose of the trust.” The broad power to construe and interpret the provisions of the trust agreement, conferred by section 2 of article VI (supra) permitted the trustees, in the court’s opinion, to treat the trust as terminated, pro tanto, as to the reserve created by contributions of dairy employers, when the dairy employers ceased to be “ employers ’ ’ and their employees ceased to be “ employees ” within the meaning of the trust instrument. The trustees had the right, under section 2 of article IX (supra) to transfer the dairy employees’ reserve to the trustees of a similar fund created for the benefit of said dairy employees. Their determination that such transfer would ‘ ‘ best effectuate the purpose of the Trust ’ ’ is amply warranted.
*202 The gross injustice which would be suffered by the Dairy Employees if the Produce Employees, who constitute the sole present membership of Local 202, were to be held entitled to retain the entire reserve for themselves, is apparent. Plaintiffs would in such event, reap an unintended windfall based on a transfer of membership over which the Dairy Employees had no control. A transfer of a portion of a pension reserve, in a situation similar to that presented here, has recently been upheld (Whelan v. O’Rourke, supra).
Cases, such as those cited by plaintiffs, which deal with the loss, by resigning members of an association, of all interest in the assets of the association, are inapplicable to the ease at bar.
In the case at bar, the proposed transfer of funds will not occasion any breach of the trust; for the moneys are to be transferred to the Local 277 Welfare Fund, where they will continue to be held in trust for the benefit of the employees on whose behalf they were received and for the same purposes as those of the Local 202 Welfare Fund. No provision of the Local 202 Welfare Fund Trust Agreement prohibits the transfer; nor are there present any countervailing considerations or conflicting policies that might justify or require the loss by the Dairy Employees of their equitable interest in their aliquot share of the reserve contained in that fund. On the contrary, under the circumstances of this case, forfeiture by them of that interest would be patently unjust.
For the reasons indicated, the court finds that the plaintiffs are not entitled to a judgment declaring that the trustees of the Local 202 Welfare Fund have no right to transfer any part of the reserve held by them to the trustees of the Local 277 Welfare Fund. The court also finds that the trustees of the Local 202 Welfare Fund are legally empowered to make the transfer here involved (Whelan v. O’Rourke, supra). Accordingly, defendants’ motion for summary judgment is granted and plaintiffs’ cross motion is denied and determination of that branch of defendants’ motion for judgment on the pleadings is academic.
Settle order in accordance with the foregoing.