John L. HARRISON, Stanley Lucas, Jr., Michael Shapoval, Leon Bloom, Sylvester E. Depaulo, James McCormick, as Trustees of United Brotherhood of Carpenters and Joiners of America, Millwright Local Union No. 1545, Welfare Fund (an unincorporated Trust Fund) and Frankie F. DiMauro, Raymond A. Paleto, James F. Harvey, Jr., Stanley A. Saltsman, Harold L. Burge, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Charles POTE, Alfred Howard, Jr., Albert Burke, as Trustees of United Brotherhood of Carpenters and Joiners of America, Local Union No. 626 Health and Welfare Fund (an unincorporated Trust Fund), and Charles Cantera, Eugene Disabatino, Roland Longenecker, as Trustees of United Brotherhood of Carpenters and Joiners of America, Local Union No. 626 Welfare Fund (an unincorporated Trust Fund), and also as representatives of the employers in interest, and Local Union No. 626 of United Brotherhood of Carpenters and Joiners of America (an unincorporated association), Defendants.

Court of Chancery of Delaware.

New Castle.

April 2, 1969.

Sidney Balick of Aerenson & Balick, Wilmington, for plaintiffs.

James J. Walsh, Wilmington, for defendants.

MARVEL, Vice Chancellor:

Plaintiffs in this case are the trustees of a health and welfare fund created for the benefit of the members of the United Brotherhood of Carpenters and Joiners of America, Millwright Local Union 1545 and such union's officers and members. Named as defendants are the employer and employee trustees of the health and welfare fund created for the benefit of the members of Local Union 626 of the United Brotherhood of Carpenters and Joiners and Local Union 626 itself. Jurisdiction to decide the respective claims to the trust funds here in issue is presumably found in this Court's general equity powers over the administration of trusts, although federal jurisdiction over the type of dispute here involved is also found in the Labor-Management Act of 1947, Sec. 302, 29 U.S.C. § 186.

The health and welfare fund of Local 626 came into being on May 24, 1962 as a result of collective bargaining between representatives of such union and a group of employers of members of such union. At that time the members of the plaintiff union were members of Local 626 and were thus designated as beneficiaries of the health and welfare fund in question. The trust agreement defined the employees for whose benefit the fund was principally intended as " * * * each individual employed, or formerly employed, by an 'Employer' and on whose account each employer makes payments into the Fund." The provision setting up such fund reads as follows:

"HEALTH AND WELFARE FUND: There is hereby established a Health and Welfare Fund to which the Employer agrees to contribute twelve and one half (12½) cents for each hour worked by his Employees, whether or not such Employees are members of Local No. 626. The Fund shall be administered as a Trust and both the Employer and the Union shall be represented by an equal number of Trustees. Payments are to be made monthly to the Trust Fund on or before the tenth day of the following month. A separate Trust agreement will be entered into by the Employer and the

Union governing the operation and administration of the Trust Fund."

On August 16, 1962, the trust agreement contemplated in the above contractual provision was entered into by Local 626 and Allied Construction Industries of Delaware, Inc., an organization made up of employers of members of Local 626, three trustees of said trust being named to represent the interests of the employees and three to represent those of the employers. By January 1, 1963, payments into the fund had sufficiently accumulated to permit the payment of benefits to the employees for whom the fund had been created. Such payments were thereafter made to qualified employees, which payments continued after July 8, 1964, the date on which Local 1545, a union proposed to be made up of qualified millwrights who were then members of Local 626, received a charter from the parent organization, the United Brotherhood of Carpenters and Joiners. As a result, the millwright members of Local 626 transferred to Local 1545. However, notwithstanding such transfer to new union membership, the 120 employees, who had so transferred, continued to contribute indirectly to the health and welfare fund of Local 626 through their employers' contributions. They also continued to receive benefits from such fund. In recognition of such situation the trustees of such fund held a meeting on July 23, 1964, at which the following transpired, according to minutes of the meeting:

"There was a lengthy discussion concerning the termination of insurance benefits of members when they leave the jurisdiction of Local Union No. 626. After discussing the pros and cons of this practice, a motion was made by Mr. Cantera, seconded by Mr. DiMauro, that a member's benefits be continued when he leaves the jurisdiction of Local Union No. 626 as long as he has been reported for enough hours to keep him in benefits and that his benefits shall not be termi-

nated as has been the practice in the past. This change is to remain in effect for an indefinite period. Motion passed."

In reasonable reliance on the adoption of such policy, the employers of members of Local 1545 proceeded to continue to contribute to the health and welfare fund of Local 626 for the benefit of members of said Local 1545 as well as for that of members of Local 626. On April 30, 1965, however, the trustees of such health and welfare fund by majority vote rescinded such organization's July 23, 1964 decision, an act of doubtful legality in view of the terms of the trust agreement looking towards coverage of former employees on whose account an employer continues to make payments into the fund.

Contending that the employees, who transferred to Local Union 1545, were involuntarily and improperly cut off from the benefits of the health and welfare fund of Local Union 626, from and after April 30, 1965, plaintiffs seek an accounting and recovery on their part of what they term the fair share rightfully due members of the plaintiff millwright union in the reserves of the health and welfare fund of Local Union 626 as of May 1, 1965, as well as for benefits allegedly due such members during the period which elapsed between May 1, 1965 and the date on which their own fund became functional.

The answer admits that, in all likelihood, the employers of the 120 transferring millwrights continued to make payments into the welfare fund of Local No. 626 for the benefit of such employees following the formers' establishment of a new union, and concede that there was a resolution of July 23, 1964, pointing out that such resolution was rescinded on April 30, 1965. Defendants further concede that the defendant trustees did not seek the consent of the member employees who left Local No. 626 to join Local No. 1545 to the rescission of the July 23, 1964 adoption of policy of the trus-

tees of Local 626 but deny that any sums are due said persons from Local 626's health and welfare fund. The withdrawing millwrights formed their own health and welfare fund on August 5, 1965, however, they apparently worked without insurance coverage from April 30, 1965 until November 1, 1965, when their own fund began to pay benefits.

Both plaintiffs and defendants have moved for summary judgment, and this is the opinion of the Court on the question of whether or not plaintiffs are entitled to an accounting as prayed for. There being no material factual issues in dispute concerning plaintiffs' basic claim to an accounting, summary judgment is appropriate.

The August 16, 1962 trust agreement here in question purported to create a fund for the benefit of each individual employee or former employee for whose account an employer had made payments into the welfare fund (which fund was to be held in trust for the exclusive benefit of employees and their families) " * * * for the purpose of paying from principal and/or income, for the benefit of employees, their families and dependents, for medical or hospital care, compensation for injuries or illnesses or for all types of insurance, to pay for any of the foregoing, for life insurance, disability, and sickness incurance and accident insurance * * * ".

Defendants argue that inasmuch as the trust agreement confers broad discretionary powers on the trustees, including the power to " * * * adopt and promulgate general rules and regulations governing the type and amount of benefits to be afforded, eligibility for benefits, the manner in which benefits are to be claimed, and the type and amount of insurance to be acquired * * * " that the action of the trustees in rescinding their July 23, 1964 resolution cannot be questioned, citing Scott on Trusts (2nd Ed.) §§ 186 and 187, and Restatement of Trusts (2nd Ed.) § 187.

Defendants further contend that having by majority vote withdrawn from Local 626, the millwrights here involved have no equitable claim in such Local's welfare fund, citing Judge v. Kortenhaus, 79 N.J. Super. 574, 192 A.2d 320. However, in the cited case, the significant withdrawal was from a welfare fund not a union. They also cite the case of Occidental Life Ins. of Cal. v. Blume, 65 Wash.2d 643, 399 P. 2d 76, in which a transfer of members to a new union was in fact followed by voluntary withdrawal from the old union fund and the establishment of a new fund.

As noted above, defendants overlook the distinction between withdrawal from a welfare fund, which was not done in the case at bar, and withdrawal from a union, which is what actually happened in the present case. Compare Nicoletti v. Essenfeld, 11 Misc.2d 197, 171 N.Y.S.2d 373. In other words, the point at which an employee loses his equitable interest in a welfare fund is, as stated in Judge v. Kortenhaus, supra, at the moment when his employment is terminated or when his employer has ceased to qualify as a contributor to the welfare fund in question. Accordingly, an interest in a welfare fund should not, in good conscience, cease when an employee merely changes unions. See 45 Virginia Law Review pp. 261 to 279, at note 84. Finally, despite the broad discretionary powers normally held by a trustee, there is no question but that he may not arbitrarily extinguish vested rights.

Turning to the facts on which the parties' cross-motions for summary judgment depend, the record discloses, as in the case of Raymond v. Hoffmann (U.S. Dist.Ct.E.D. of Penna.) 284 F.Supp. 596, that the withdrawing millwrights intended merely to withdraw from Local 626 and not from such Local's welfare fund, a position supported by the trustees' July 23, 1964 resolution. In other words, had the millwrights contemplated the possibility of expulsion from such fund at a future date,

they might well have remained with Local 626. Furthermore, it is indicative of the parties' intent that the millwrights' employers, on the strength of the July 23, 1964 resolution, thereafter continued to pay benefits for such individuals into Local 626's fund. Under these circumstances, it would be inequitable, in my opinion, not to order an accounting as prayed for, in order to determine the complaining millwrights' equity, if any, in Local 626's fund as of May 1, 1965, as well as the extent of coverage provided said withdrawing millwrights by the Local 626 welfare fund during the period which elapsed between May 1, 1965 and the beginning of coverage out of the new fund created for the benefit of the millwrights alone.

Matters to be considered in said accounting, in addition to those mentioned above, are the number and identity of millwright employees who reported for at least 250 hours[1] of work during the three month period immediately preceding the action of the trustees on March 23, 1965 and the amount, if any, contributed to the fund by employers for the benefit of millwrights after March 23, 1965. I say this because the eligibility rules of the fund provide for benefits for three months following three months of work. Such benefits, which are to commence thirty days after the first three month period, appear to be vested. As to the employer contributions following the action of the trustees of March 23, 1965 which rescinded the July 23, 1964 resolution, equitable principles discussed above militate against ignoring the rights of employee millwrights in such contributions. The amount of such contributions can be first determined in the accounting to follow and thereafter equitably allocated.

On notice, an appropriate order entering summary judgment for plaintiffs directing an accounting as aforesaid may be presented.

1. See page 3 of eligibility rules of Carpenters Local Union No. 626 Welfare Fund (exhibit A to DiMauro affidavit).