Bernard S. Meyer, J.
This motion for summary judgment presents the question: what, if anything, is reached by service of a restraining notice or issuance of an execution against the interest of an individual laborer in a fund held not by his *1043 employer, but by a trust established as a result of collective bargaining? Plaintiff in this declaratory judgment action is the vacation fund upon whose officials have been served restraining notices or executions or both seeking to reach the interests of six laborers in the fund. Defendants are the Sheriff who issued the executions and the judgment creditors who caused the restraining notices to be served or the executions to be issued.
To answer the question requires careful, even somewhat tedious, examination of the provisions of article 52 of the CPLR, of the trust agreement under which the funds are held, of the plan established by the trustees under the trust agreement, and of certain background facts.
There is no dispute concerning the facts. Laborers Union Local 1298 is a labor union made up of and representing general laborers working on road and heavy construction operations in Nassau and Suffolk Counties. The Nassau and Suffolk Contractors Association Inc. is an association of contractors in the building and construction industry which represents most of the employers of members of the union. Because of the nature of their employment, many of the members of Local 1298 are employed for short periods by different employers, in consequence of which they are unable to acquire from any one employer the right to an annual vacation with pay.
On May 8, 1967 the union and the association entered into an agreement and declaration of trust establishing Laborers Union Local 1298 of Nassau and Suffolk Counties Vacation Fund, which is the plaintiff in this action. The agreement provided that the vacation fund should be operated and administered jointly by six trustees, three appointed by the union and three by the association, that each employer, whether or not a member of the association, should contribute to the fund at the rate required by the collective bargaining agreement then in force, that the trustees or the administrator of the fund have the right to audit an employer’s records to ascertain whether the full payment required is being made, to assess penalties and sue for such contributions and where court action is instituted to recover reasonable attorneys ’ fees, that the trustees shall use and apply the fund thus collected to pay expenses of collection and administration, “ to provide vacation benefits in the form of vacation pay, in such amount or amounts as the trustees in the exercise of their discretion may determine to be the vacation payment of each eligible employee under a Vacation Plan containing such rules of eligibility and other regulations as the Trustees may promulgate ”, and to establish such reserves as the trustees deem necessary. On termination of the trust, the trustees are *1044 to apply any surplus after payment of obligations in such manner as in the opinion of the trustees best effectuates the purpose of the fund, but no part of income or corpus may revert to an employer or for the benefit of the union.
The agreement contains provisions protecting the trustees and persons dealing with the trustees and concerning the powers of the trustees, usually found in trust instruments. It also gives the trustees express power: (1) to construe the agreement and the plan, and makes such construction adopted in good faith binding upon the union, the employers, the employees and their beneficiaries and legal representatives; (2) to formulate a vacation plan for the exclusive benefit of the employees in order to provide vacation benefits for eligible employees, and to disburse both principal and income for the purposes of the trust;.(3) to establish rules of eligibility and other regulations for operation of the plan, and determine all questions relating to eligibility of employees to participate; and (4) to pay all taxes,• including income, payroll and other taxes arising out of or applicable to the fund, the contributions made to it or the payment of vacation benefits to eligible employees.
With respect to the rights of the individual employees, the agreement provided in article XII:
“ Section 1. vested eights. No Employee or any person claiming by or through such Employee, including his family, dependents, beneficiary and/or his legal representatives or the legal representatives of his estate, shall have any right, title or interest in or to the Fund or property of the Fund or any part thereof except as may be specifically determined by the Trustees.
“ Section 2. ehoumbbahce of benefits. No moneys, property or equity, of any nature whatsoever, in the Fund, or policies or benefits or moneys payable therefrom, shall in any manner be subject by any Employee or person claiming through such Employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null, void and of no effect.”
Effective July 1, 1967 the trustees adopted a vacation plan which established the benefit year as the period from July 1 to the next June 30, required that ‘ ‘ Each eligible employee shall be credited with all vacation contributions actually contributed on his behalf during each benefit year and a separate record shall be set up for each employee ”, that a flat service charge fixed by the trustees be deducted each year from the employee’s account, and that “ The balance in an employee’s vacation account at the end of each benefit year [June 30] shall be payable to the *1045 employee in December of each calendar year or as soon thereafter as possible, less any taxes or deductions required by law ”.
Until April 6,1970, the plan provided: ‘ ‘ (h) Vacation benefits payable to eligible employees are vested and non-forfeitable, and shall not be assigned, pledged, encumbered, released or committed, and shall be exempt from all claims of creditors from levy, execution and attachment or any other remedy for recovery of a collection of a debt”, and in subdivision (i) directed that any balance in an employee’s account when he died should be paid to his distributees or personal representative.
On April 6,1970 subdivision (h) was amended to read in part: “ (h) Vacation benefits payable to eligible employees shall not be assigned, pledged, encumbered, released or committed, and shall be exempt from all claims of creditors from levy, execution and attachment or any other remedy for recovery of a collection of a debt, except pursuant to court order or as hereinafter set forth in this subsection, ’ ’ and to direct that if a former participating employee failed to apply for his vacation allowance within five years of the July 1 immediately following the last vacation year during which “ contributions were made on his behalf ” the money shall be paid into the expense account, the trustees, however, being authorized thereafter on written application by the employee to pay to him out of the expense account his vacation benefit. At the same time subdivision (i) was changed to provide that any unpaid balance in an employee’s account at his death be paid to the beneficiary or beneficiaries he designates, and in the absence of designation or of a surviving beneficiary, to the fund expense account.
The papers do not disclose when the contributions made on behalf of the six employees were paid into the fund, or, except as to defendant Chemical Bank, the dates on which the restraining orders were served or executions levied. Chemical Bank’s answer states that its restraining notice was served on July 17, 1970, and it may reasonably be inferred from the fact that the action was not begun until December, 1970 that service or levy in the other cases occurred after April 6, 1970. Contributions have been made to the fund at the rate of 50 cents per hour for each hour worked by an eligible employee and such contributions have been accumulated to the account of the respective employees and, after deduction of a pro rata share of expenses, distributed to the individual employee, once a year. At the time of the service of the restraining order or levy of execution, each of the six employees involved had a credit balance in his account ranging from a low of $177 to a high of $761.50.
*1046 The declaration asked by the fund, and resisted by defendant creditors, is that article XII, sections 1 and 2 are valid, that by reason thereof no employee is entitled to any money credited to his account until the trustees so declare, that under the procedures of the plan there is no such entitlement until the employee actually receives payment, that the funds, therefore, are not subject to execution or restraint, and that in any event money held for an employee member is exempt under CPLR 5205 (subds. [d] and [e]).
CPLR 5201 (subds. [a] and [b]) declare that a judgment may be enforced against any debt or property, unless exempt, if the debt ‘ ‘ is past due or yet to become due, certainly or upon demand of the judgment debtor ’ ’ or if the property ‘ ‘ could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested ”. CPLR 5205 (subd. [d]) exempts “ Any property while held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor ” and subdivision (e) of that section exempts,
11 except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents:
“ 1. ninety percent of the income or other payments from a trust the principal of which is exempt under subdivision (d);
“ 2. ninety percent of the earnings tif the judgment debtor for his personal services rendered within sixty days before, and at any time after, an income execution is delivered to the sheriff or a motion is made to secure the application of the judgment debtor’s earnings to the satisfaction of the judgment ”.
CPLR 5222 deals with restraining notices. Its subdivision (b). provides in part: “ A restraining notice served upon a person other than the judgment debtor is effective only if, at the time of service, he owes a debt to the judgment debtor or he is in the possession or custody of property in which he knows or has reason to believe the judgment debtor has an interest. * * * All property in which the judgment debtor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person * * * and all debts of such a person * * * then due and thereafter coming due to the judgment debtor, shall be subject to the notice.”
CPLR 5232 (subd. [a]) governing levy by service of execution deals in substantially similar terms with levy on a debt or “property not capable of delivery.” A restraining order remains effective for one year after the notice is served unless *1047 the judgment is sooner vacated or satisfied (CP.LR 5222, subd. [b]) or the life of the notice is extended (CPLR 5240). A levy of execution expires 90 days after service unless extended by court order (CPLR 5232, subd. [a]).
Are vacation benefits payable to an employee under the agreement and plan to be classified as “ earnings ” or as “ trust payments ”! A paid vacation or vacation pay accumulated by an employer without the interposition of a trustee is generally regarded as additional earnings of the employee (Ann. 30 ALR 2d 351) and constitutes “wages” under Debtor and Creditor Law (§ 22, subd. 2), and “ wage supplements ” under Labor Law (§ 198-c), though it is not “ property ” that passes to a wage earner’s trustee in bankruptcy (Lines v. Frederick, 400 U. S. 18). Here, however, the agreement has all the formal aspects of a trust, as is required by section 302 of the Labor-Management Relations Act (U. S. Code, tit. 29, § 186), and conforms with the other requirements of that section.
Does the interposition of a trustee mandate the conclusion that money held by the fund in the account of an employee is not wages or earnings, but an interest in a trust! For purposes of the Federal income tax law, payment of that money to the employee by the trustees constitutes “ wages ” (see Matter of Educational Fund of Elec. Ind. v. United States, 426 F. 2d 1053, 1056). The employer’s contribution being measured exactly by the number of hours the particular employee performed services, ‘ ‘ the trustees’ relationship to the employees * * * is closely analogous to that of an assignment ”, for purposes of determining the trustees ’ right to maintain an action on a Miller Act bond (United States v. Carter, 353 U. S. 210, 220 ; accord: Martin v. Casey & Sons, 5 A D 2d 185, affd. 8 N Y 2d 728 [suit on contractor’s bond]; see Matter of Larry Jay, Inc. [Joint Bd. of Dress & Waistmakers’ Union], 3 A D 2d 386, affd. 4 N Y 2d 912 [pension fund payments given priority under section 22 of the Debtor and Creditor Law in employer’s assignment proceeding]). And the trustees are not subject to article III-A of the Insurance Law covering employee benefits in the nature of insurance, because the employers ’ contributions are 1 ‘ definite amounts due to employees * * * as the vacation wages they might earn in a particular year for services rendered” (McKay v. Stewart, 35 A D 2d 556, 557, mot. for lv. to app. granted 27 N Y 2d 489 ; see Nicolette v. Essenfeld, 11 Misc 2d 197 ; Raymond v. Hoffmann, 284 F. Supp. 596, 601).
Payments due to trustees of such a fund by a bankrupt employer have been held entitled to priority as wages to the *1048 extent accrued during the three months preceding bankruptcy where, though the trustees of the fund had supervisory powers, contributions by the employer varied directly according to wage rate and hours worked, the employee had a vested right to the money in his account which he or his heirs were certain to get, and the trustees were required to pay income and other taxes on the amounts paid out to employees (Sulmeyer v. Southern Cal. Pipe Trades Trust Fund, 301 F. 2d 768 ; see, also, United States v. Munro-Van Helmes Co., 243 F. 2d 10, and cases cited therein), but not when the employer’s contribution was a flat sum per day or month, unrelated to hours worked, the trustees to whom payments were made enjoyed not only sole title but exclusive management of the fund, and no employee had any specific interest (Joint Ind. Bd. v. United States, 391 U. S. 224 ; United States v. Embassy Rest., 359 U. S. 29). Generally, as to the relationship between contributions to such a trust fund and wages, see Ann. 88 ALR 2d 493, 536, and as to the priority in bankruptcy or insolvency of contributions to such a fund (see Ann. 17 ALR 3d 374, 380).
To be kept clearly in mind, however, in considering those cases as precedents, is the fact that “ the sense in which [a term] is used in a given statute depends not only upon the wording of the statute but the purpose of the law as well ” (People v. Vetri, 309 N. Y. 401, 407). Each of the above decisions can be explained in terms of the legislative policy involved (Lines v. Frederick, 400 U. S. 18, supra) in view of the purpose of the Bankruptcy Act to provide the wage-earning bankrupt with a “ new opportunity in life and a clear field for future effort the Educational Fund case (supra), in light of the policy that income not go untaxed; the Carter, Sulmeyer and Embassy Rest, cases, in terms of a policy to protect a wage earner against the insolvency of his employer by permitting suit by the fund trustee on the contractor’s bond or by giving priority to the trustee’s claim unless not directly related to earnings; the McKay case because, as the court noted, it is unnecessary to impose Insurance Department supervision on such funds when the Labor Law sufficiently protects the employee’s interests in them.
What are the policy considerations underlying the CPLR provisions quoted above ? The basic general policy is that ‘1 creditors shall have the right to resort to all the property of the debtor not protected by statute ” (Schenck v. Barnes, 156 N. Y. 316, 319 ; see Matter of Rosenberg, 269 N. Y. 247, 250, cert. den. 298 U. S. 669 ; Bergmann v. Lord, 194 N. Y. 70, 75). Thus, EPTL 7-3.1 expressly declares (as CPLR 5205, subd. [d]) clearly *1049 implies (see Schenck v. Barnes, supra) that “ A disposition in trust for the use of the creator is void as against the existing or subsequent creditors of the creator.” As to a trust created by someone other than the judgment debtor, however (1) CPLR 5205 (subd. [d]) exempts the principal so long as it remains in trust, (2) CPLR 5205 (subd. [e], par. 1) exempts 90% or such part thereof as a court determines to be necessary for the reasonable requirements of the debtor, of the 1 ‘ income or other payments ” from such a trust, the words “ or other payments ” having ‘ ‘ been added to cover payments of principal made from the trust ” (Third Preliminary Report of Advisory Comm, on Practice and Procedure; N. Y. Legis. Doc., 1959, No. 17, p. 118), (3) a remainderman’s creditors can nonetheless, during the life of the trust reach his right to receive principal when the income estate falls in (Bergmann v. Lord, supra ; Matter of Chusid, 60 Misc 2d 462, 466, affd. 35 A D 2d 655 ; Matter of Owen, 44 Misc 2d 842 ; Sherman v. Kirshman, 261 F. Supp. 858 ; 6 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5205.22), (4) creditors can also reach the remainderman’s interest if he has the unfettered right to draw down the principal at will (Ullman v. Cameron, 186 N. Y. 339 ; see Matter of Sand v. Beach, 270 N. Y. 281) for the court will look through “ obvious pretext ” (186 N. Y., at p. 345) and “ meaningless formulas ” (270 N. Y., at p. 286), (5) if, however, the trust instrument expressly makes the remainder interest inalienable an assignment before the trust has ended is unenforceable (Matter of Vought, 25 N Y 2d 163). Despite the policy against permitting the creator of a trust to exempt his interest in it from creditors, the Legislature has, in at least one instance, exempted property (life insurance proceeds) on the basis of an agreement to which the debtor is a party, that the property shall not be subject to legal process (EPTL 7-1.5 ; Matter of Genesee Val. Trust Co. v. Glazer, 295 N. Y. 219). Unfortunately, no similar express legislation covering vacation funds exists. Decision turns, therefore, on the more general and somewhat conflicting policies above outlined.
How, in this context, is an employee’s interest under the plan to be categorized? Though the question is not free from doubt the court concludes that it is to be treated as a trust interest and not as earnings. Neither an “ obvious pretext ” nor a “ meaningless formula ”, the agreement (and the resultant plan) stems from the economics of the industry rather than from an effort to put an employee’s earnings beyond the reach of his creditors. True, it attempts to protect the employee’s interest in the fund against his creditors, but the same enlightened interest of the *1050 employers that is the predicate for their agreeing in collective bargaining to creation of the fund (cf. Matter of Teachers Assn. [Bd. of Educ.], 34 A D 2d 351), establishes the legitimacy of provisions assuring, to the extent permitted by law, that the employers ’ payments will be available for the purpose intended (vacation) rather than some unrelated purpose. As already noted, the creation of the fund as a trust is mandated by the Labor-Management Relations Act, and while that may have stemmed from a purpose to ensure (through joint control and provisions for disclosure) full accountability, that is but a broader aspect of the same purpose: — that the moneys paid by employers be available for the purpose for which paid.
In concluding that there is a trust the court is not blinking the facts that payments into the fund find their origin in hours worked by a particular employee, that an individual account is maintained for the employee, and that at a given time (December of any year with respect to the prior benefit year) the employee is entitled to draw down the balance that was in his account at the end of the benefit year. It does not give those facts determinative weight, because (1) the nature of the employment is such that the individual employees would not become entitled to vacation benefits from any one employer; in a very real sense, therefore, the benefits result from something (the collective force of union bargaining) in addition to the individual’s efforts; (2) the employers’ payments must be made to the fund; the employee cannot sue for them directly (Republic Steel v. Maddox, 379 U. S. 650 ; Martin v. Casey & Sons, 5 A D 2d 185, affd. 8 N Y 2d 728 ; see Ann. 88 ALR 2d 493 ; cf. Ann. 18 ALR 2d 352), nor can the union sue (Matter of List Ind. Corp. [Gelber], 11 Misc 2d 735) ; (3) the contribution being required by the collective bargaining agreement on the basis of man-hours worked, the employee has no right individually to waive its being made; (4) the trust is not dry or passive, for the principal (the employers’ contributions) is to be invested, income received, expenses paid and income and portions of principal paid out (EPTL 7-1.1 and 7-1.2 ; Matter of Fischer, 307 N. Y. 149), and since benefits paid in December .of any year stem from what accumulated during the benefit year (ending on the preceding June 30) there will always be a principal balance in the individual’s account until he dies or leaves the industry; (5) the employee cannot demand any payment from the fund until 5 to 17 months after his employer has paid his contribution in (see Nicolette v. Essenfeld, 11 Misc 2d 197, 200) ; (6) such precedent as exists accords with treating the benefit as a trust pay *1051 ment (see Matter of League Union Welfare Trust Fund [Dairymen’s Assn.], 53 Misc 2d 1023 ; Ryan v. Edgerton, 177 Misc. 421).
The conclusion that the employee’s right to vacation benefits from the vacation fund constitutes a trust interest does not dispose of the matter, however. There remain the questions of the effect of CPLR 5205 (subd. [d] and subd. [e], par. 1).
Nothing before the court directly establishes what, if any, part of income earned by the trustees on investments is credited to the accounts of individual employees, though it seems reasonable to infer (from section 2 [e] of the plan and the statement in the Mayo affidavit that expense deductions have been made annually from the individual accounts) that to date no income has been credited to them. It is not necessary to determine the fact, however, for, as noted above, CPLR 5205 (subd. [e], par. 1) now explicitly covers not only income but payments of principal made from the trust. Thus, paragraph 1 of subdivision (e) now covers all periodic, payments made by a trust whether from income or through invasion of principal, while subdivision (d) is concerned only with the principal so long as the trust continues and before invasion. In effect, the agreement and plan create a revolving fund, the employers’ contributions constituting the principal of the fund and periodic payments being made to the beneficiaries by invasion of, but not exhaustion of, principal, which payments include, perhaps, some small amounts of income. Such payments are governed by CPLR 5205 (subd. [e], par. 1).
Plaintiff argues, however, that no employee is entitled to money credited to his account until he actually receives it and that it, therefore, is beyond reach of creditors. The argument misconceives both the effect of the agreement and plan and the reach of CPLR 5205 (subd. [e], par. 1). True, article XII, section 1 of the agreement states that no employee ‘ ‘ shall have any right, title or interest in or to the Fund or any property of the Fund or any part thereof except as may be specifically determined by the Trustees,” section 2 of that article says that “ benefits or moneys payable” from the fund are not assignable or reachable by garnishment, and section 2 (h) of the plan makes vacation benefits unassignable and says that they are exempt from collection remedies. The plan, however, recognizes that contributions are made on the individual employee’s behalf and requires that a separate record be “ set up for each employee for the purpose of accumulating the contributions during each benefit year ” (§ 2 [a]) and that the balance after deduction of expenses in an employee’s account at the end of *1052 a benefit year “ shall be payable to the employee in December of each calendar year or as soon thereafter as possible ”. The trustees have no discretion to make payment to any person other than the employee-beneficiary and no discretion to withhold payment beyond December 31 in any year, though they may have a defense, should an employee sue after December 31, on the ground that payment in December was, for some good reason, not possible. It follows that the employee’s vacation benefit, though not transferable prior to December 31 (or such earlier time in December as the trustees determine that payment should be made), comes within the employee’s unfettered reach and becomes at that point a debt due upon demand of the judgment debtor within the meaning of CPLR 5201 (subd. [a]), and subject to execution unless exempt (see Hamilton v. Drogo, 241 N. Y. 401 ; Matter of Ungrich, 201 N. Y. 415).
CPLR 5205 (subd. [a], par. 1) exempts only 90% of such payment and limits even that exemption when a court determines that the reasonable requirements of the employee and his dependents can be met by less than 90%. Thus, -at least 10% and perhaps more is within reach of process, and since the purpose of the statute is “ to that extent [to] destroy the immunity of the beneficiary of a spendthrift trust from claims of his creditors ” (Matter of Sand v. Beach, 270 N. Y. 281, 286), the spendthrift provisions of the agreement and plan are no bar (ibid., see Sarver v. Towne, 285 N. Y. 264, 270) ; and to that extent the employee’s right to receive vacation benefit payments is transferable notwithstanding the spendthrift provision of the trust, and constitutes ‘6 property ’ ’ within the meaning of CPLR 5201 (subd. [b]), 5222 and 5232 (subd. [a]). Since at the time of service of the restraining notice or execution, the fund was, therefore, in possession of property in which it knew the employee-debtor had an interest and since CPLR 5222 and 5232 (subd. [a]) cover debts “ then due or thereafter coming due to the judgment debtor,” the process is effective and, provided only that it remains alive until the December payment date is fixed, requires payment to the creditor of at least 10% of the benefit payable to the employee. Nor does the discretion of the trustees to pick the particular day in December on which payment will be made affect the result, for ‘ ‘ At lease for some appreciable time, however brief, the award must precede the delivery of the income [payment] he is to receive and during that time the lien of the execution attaches ” (Hamilton v. Drogo, supra, p. 404). The court has not overlooked the fact that to reach more than 10% the creditor must by motion have the require *1053 ments of the debtor and his dependents fixed (CPLR 5226) and that no such motion has been made by defendant-creditors. That fact is not relevant in this declaratory judgment proceeding; each creditor retains the right to make such a motion so long as his restraining notice or execution remains viable.
The remainder interest of an individual employee in the fund ordinarily will not be of significance in view of the annual principal payments which the trust requires, but whatever its size the parties are entitled to a present determination concerning it. Whereas trust income is spendthrift by statutory provision (EPTL 7-1.5, subd. [a], par. [1]), except as CPLR 5205 (subd. [e], par. 1) permits creditors to reach it, the remainder interest in a trust is assignable and transferable (EPTL 7-1.5, subd. [a]). Such an interest is therefore, within the reach of creditors (CPLR 5201, subd. [b]), except as exempted by statute or by spendthrift provision of the trust instrument. The principal exemption provided by CPLR 5205 (subd. [d]) is of “ the property while held in trust ” as distinct from the remainderman’s interest in that property (Matter of Owen, 44 Misc 2d 842), and, therefore, as noted above, that subdivision does not exempt the remainderman’s interest from sale on execution during the life of the trust, though the purchaser at an execution sale takes no more than the right to receive the trust assets when the income interest falls in (see Sarver v. Towne, 285 N. Y. 264). A spendthrift provision as to principal is, however, valid and invalidates a transfer of the remainder made during the life of the trust (Matter of Vought, 25 N Y 2d 163), even as an assignment of the right to receive the principal when the trust terminates (ibid., 25 N Y 2d, at p. 174). There is, thus, nothing in a spendthrift remainder interest that a restraining notice or execution can reach during the life of the trust. However, the remainder-man, even of a spendthrift trust, has an assignable interest once the trust has terminated. Moreover, the word “ debt ” as used in CPLR 5222 and CPLR 5232 (subd. [a]) includes a cause of action (CPLR 5201, subd. [a]) and, provided only that at the time of service of the notice or execution there is some other debt owed or properly held, the notice or execution is effective as to “ all debts * * * thereafter coming due to the judgment debtor ” during the life of the notice or execution. By force of that statutory provision, the notice or execution, if valid at inception and kept alive until the trust terminates, will, unlike the assignment considered in Matter of Vought (25 N Y 2d 163, supra) carry with it the right to receive the assets which constitute the remainder when the trust terminates. The situation is *1054 no different than that of a personal injury action or a stock exchange seat, the first unassignable by statute and the second by contract, a lien upon which becomes perfected when the proceeds of the asset, as distinct from the asset itself, become available (Matter of Gruner, 295 N. Y. 510 ; Stathos v. Murphy, 26 A D 2d 500, affd. 19 N Y 2d 883 ; Grossman v. Schlosser, 19 A D 2d 893). As Matter of Gruner (supra) demonstrates, and Moorstein & Co. v. Excelsior Ins. Co. (25 N Y 2d 651, 653) confirms, there may be claims arising after service of a restraining notice or execution which are entitled to priority, notwithstanding the priority in time of the notice or execution. Such questions are not now before the court, which holds, as to the remainder interest only, that a notice or execution, valid at its inception, kept alive until termination of the trust and not displaced by some later accruing but higher priority interest, will entitle the judgment creditor to the assets which constitute the principal when the trust terminates.
Settle on notice an order and judgment (in one paper) granting the motion and declaring that (1) article XII, sections 1 and 2 are valid and, except as limited by CPLR 5205 (subd. [e], par. 1), are effective until the trust as to an individual employee terminates; (2) that the vacation benefit payable to an individual employee under the agreement and plan constitutes a debt due the employee from and after midnight December 31 in each year or from such earlier date in December of said year as the trustees fix for payment; (3) that the vacation benefit payable annually to an individual employee is subject to restraint or execution to the extent permitted by CPLR 5205 (subd. [e], par. 1); and (4) that an employee’s remainder interest is subject to restraint or execution under the conditions and to the extent hereinabove set forth.