OPINION OF THE COURT
Edgar C. NeMoyer, J.
Plaintiff Chautauqua County Sheriff’s Employees Association (hereinafter called Sheriff’s Association) claims a portion of a sick leave bank reserve which had been partially funded by its members when they were members of another union. Most of plaintiff’s members had previously been members of defendant Local 807, the Civil Service Employees Association, Inc. (hereinafter called Local 807) and had contributed sick leave days to a sick leave bank under a now expired contract between the Local 807 and defendant County of Chautauqua.
The plaintiff sues Local 807 and the County of Chautauqua for the transfer in bulk to its sick leave bank of those sick leave credits which its members had contributed to Local 807’s bank or, in the alternative, to credit its individual members with the sick leave days they had contributed. Local 807 argues that individual rights to sick leave credits were extinguished when contributed and any rights to benefits were lost when the *470 Sheriff’s Association members broke away from Local 807. Local 807 contends that it is entitled to the carry over of sick bank reserves from the old to the new bargaining unit despite the drastic change in its membership when the plaintiff was certified by the Public Employees Relations Board as a separate bargaining unit for most of the Sheriff’s Department employees.
Local 807 has moved for a judgment of dismissal pursuant to CPLR 3211 (subd [a], pars 1, 5, 7, 8) on the grounds that it has a defense based upon documentary evidence, the suit is barred by the Statute of Limitations applicable to CPLR article 78 proceedings, the pleading fails to state a cause of action and the court lacks jurisdiction of the person of defendant Local 807. In the alternative, Local 807 moves under CPLR 3212 for summary judgment.
The motion for dismissal is denied. The defense based upon documentary evidence has been waived under CPLR 3211 (subd [e]) by failing to move before service of the responsive pleading or to preserve the grounds in its answer. The defendant County of Chautauqua has not raised the bar of the Statute of Limitations. The complaint states a cause of action sounding in the conversion or wrongful withholding of contractual benefits.
The court has acquired personal jurisdiction over Local 807 by the plaintiff’s service of process on a vice-president of Local 807 pursuant to section 13 of the General Association Law, Local 807 being a labor organization.
The motion for summary judgment is less easily decided. It requires analysis of the nature of the sick leave and the old and new bargaining contracts. Neither old nor new contracts address the problem of allocation of sick leave reserves when a collective bargaining unit is fragmented and the resulting groups lay claim to the same reserves. It is assumed that the reserves in this instance survived the expiration of the original contract under which they were accrued and are subject to administration under successive contracts. Defendant County of Chautauqua, upon whose books the sick leave reserves have accrued has taken no position on this motion and its personnel director serves as coadministrator of the banks under each contract.
The initial contract between the County of Chautauqua and Local 807 was in effect from January 1,1978 through December 31, 1980, and covered all county employees except department heads, elected officials and officials who had power to appoint subordinate personnel. It included most of the Sheriff’s employees who now are in the plaintiff’s bargaining unit. The contract *471 expired December 31,1980, but its provisions remained in effect “until the parties reach a subsequent agreement”.
Defendant Local 807, whose membership has been drastically altered by the breakoff of the Sheriff’s Association, signed a new contract with the county on August 7, 1981, retroactive to January 1, 1981, and effective until December 31, 1983. The Sheriff’s Association was certified in May, 1981, to represent all full-time employees of the Sheriff’s Department except the Sheriff, undersheriff, court officers, attendants and clerk-typists. Plaintiff signed a contract with the county on October 22, 1981, retroactive to January 1, 1981, and effective through December 31, 1983, the same time period as Local 807’s contract.
All contracts provide substantially that a full-time regular employee earn one day of sick leave for each calendar month of service with accrual and use of sick leave dependent upon whether the employee was in Plan A or Plan B. Plan B includes only pre-1978 employees who exercised an option to be in Plan B and makes no provisions for a sick leave bank. Plan A covers all employees hired on or after January 1,1978, and those pre-1978 employees not in Plan B.
Plan A provides for an accrual of sick leave to a maximum of 150 days. A retiring employee’s medical insurance would be paid by the county at the rate of one month for each three days accrued leave between 75 to 150 days. It also provided for a sick leave bank which mandated that each Plan A employee contribute one day of sick leave accrual as of January 31 of each year. A Plan A employee who was sick more than 20 days and had used up his accrued sick leave and extended sick leave could receive from the bank additional sick leave for a period not greater than his sick leave accrual on the first day of his illness or disability. Benefits depended on need rather than the number of contributed days or length of employment.
As of January 7, 1983, members of the Sheriff’s Association had contributed to the old sick leave bank some 220 days of sick leave from January 1, 1978 through October 22,1981, when its separate contract was signed. As of January 7,1983 the plaintiff represented 84 employees with 74 employees in Plan A. No sick leave days had been credited to its sick leave bank. Apparently all of the sick leave days in the sick leave bank under the 1978-1980 contract had been carried over into the sick leave bank of Local 807 under their new contract and the sick leave benefits of the plaintiff’s members had been deemed forfeited by the county and Local 807.
*472 Such forfeiture is not favored by this court. The contributions made by the plaintiff’s members constitute a portion of the compensation they received as employees and the benefits to which their contributions were converted are equitable interests in the reserve bank which must be protected if severe injustice to the plaintiff’s members is to be avoided.
The forfeiture which the Sheriff’s employees would suffer, if this lawsuit were dismissed, is compounded by the changes in the 1981-1983 contracts by which contributions are severely limited. The 1978-1980 contract provided that a contribution of one day be made each year. The new contracts provide that yearly contributions be limited to the first three years of employment with additional contribution only if the bank reserves fell below a certain trigger point. The net effect of this change vis-a-vis the two unions is to deny the Sheriff’s Association hank the benefit of their past contributions without the possibility of making up their loss from continued yearly contributions of pre1981 employees. Both old and new members are subject to trigger point contributions in the event of any but minimal claims on their bank. The adoption of such changes argues strongly that forfeiture of approximately 220 days of sick leave against a trigger point of 3 714 days was not in the mind of the negotiators of these contracts. The members of Local 807 would reap an unintended windfall at the expense of a gross injustice to the plaintiff’s members.
Since the contract is silent as to the roll over of accrued sick leave bank reserves or the allocations of reserves between successor bargaining units to the fragmented bargaining units, this court will exercise its equitable powers to effect a fair division of these reserves. Clearly, where a reserve is accumulated in a sick leave bank, just as in a welfare fund or a trust or an employee benefit fund, whatever called, equity requires that such reserves be enjoyed by the employee on whose behalf the reserve was accumulated. (Nicolette v Essenfeld, 11 Misc 2d 197.) There appears to be no reason to favor Local 807 sick leave bank since their position as successor to the original bank is the same as the plaintiffs.
The court is not unmindful of the cases which hold that a resigning or expelled member of a union leaves behind his undivided share of the union’s assets. But here the reserve bears characteristics of a trust or welfare fund and here a collective bargaining unit was fragmented into two units, with the certification of the Public Employees Relations Board and apparently with the consent of the defendant Local 807. It is also notewor *473 thy that the organizational and bargaining rights of public employees are severely restricted and special care is appropriate when their equitable interests are in jeopardy.
The defendant Local 807 rightly urges that each contributing member of the Sheriff’s Association is not entitled to the direct return of his contribution, such individual contribution being merged into the common fund. But this is not to deny such members potential benefits of the sick leave bank for which they bargained and gave up substantial rights.
For the reasons indicated, this court finds that defendant Local 807 is not entitled to retain all of the sick leave bank reserves rolled over to it as of January 1, 1984, or which it collected from the plaintiff’s members since December 31,1980. Its motion for summary judgment is denied and summary judgment, pursuant to CPLR 3212 (subd [b]), is granted to the plaintiff against both defendants.
It is ordered that the defendants by their representatives transfer from Local 807’s sick leave bank to the plaintiff’s sick leave bank all the sick leave days contributed by the plaintiff’s members minus the sick leave days disbursed from Local 807’s bank under the sick leave plan to the plaintiff’s members